IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MIRIAM WEBER MILLER | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO.  16-3943 |
| CEREBAIN BIOTECH CORP. and | : | |
| ERIC CLEMONS | : | |

O'NEILL, J.                                                          November 8, 2016

### MEMORANDUM

The present action involves a claim for wages and/or compensation by plaintiff Miriam Weber Miller against defendants Cerebain Biotech Corp. and Eric Clemons.  Defendants have filed a motion to dismiss all of plaintiff's claims for failure to state a claim upon which relief may be granted.  For the following reasons, I will deny the motion.

### FACTUAL BACKGROUND

According to the facts set forth in the complaint, plaintiff was hired by Cerebain in May 2014 to be a senior member of its management team.  Compl., ECF No. 1, ¶ 6.  Miller was to provide services and support relating to Cerebain's public relations, investor relations and corporate growth strategies and was to be an advisor available to the Chief Executive Officer for any specific needs or projects, as required.  Id. ¶ 7.  The parties agreed that plaintiff would receive compensation in the amount of $140,000 per year, plus $400 per month in on-going expenses.  Id. ¶ 8.  Plaintiff then memorialized the details of the parties' negotiations in an email dated May 22, 2014, to Cerebain's CEO, defendant Eric Clemons.  Id. ¶ 9 & Ex. A.  That e-mail stated, in pertinent part:

Hi Eric,

I hope this note finds you well. As we discussed, I am sending you this summary of our conversation from my personal email account. Please use this email for me going forward:

Okay, here goes:

**Overview of Long-Term Agreement**
1. Base salary of $140,000/year beginning on July 1.
2. $400/month in on-going expenses to offset office costs. Please let me know if I need to provide receipts
3. Benefits: I am planning to secure my own package of benefits at this time.  In lieu of my participation in the Company's benefits package, we discussed me receiving a stipend equal to the amount of money the company *would* be spending on my behalf if I participated in the company plans.  I am not asking the company to come out-of-pocket for anything additional beyond what you would spend.  This will be helpful to me so that I can keep my benefits in tact [sic] once the sale of the company occurs.
4. Stock/Stock Options: We discussed some level of stock and/or stock option award, which can occur in whatever timeframe you feel appropriate.  We agreed we would solidify these details after my formal start date of July 1.
5. Title: TBD

**The Month of June**
1. I will come on-board as a consultant for the month of June.
2. My suggestion is we agree to a one-time payment of $12,000. This is 140,000/12 + $333 in expenses. If you don't want to pay expenses in June, I am fine with that. We can just do $140,000/12. PLMK

**Question:** Do travel expenses get reimbursed?

Okay, so I am VERY excited about the chance to work with you! I love what you are doing and I am ready to make this happen, so thank you!

Id., Ex. A.  Cerebain subsequently released an announcement over the Business Wire naming

plaintiff as Executive Vice President.  Id. ¶ 10 & Ex. B.

Plaintiff thereafter provided all requested services to Cerebain, including creating the content for and managing the development and launch of the corporate website, preparing a strategic outreach plan, preparing a community outreach plan, preparing an Alzheimer's Month Observation plan and preparing a social media strategy.  Id. ¶ 11.  She also prepared and maintained a comprehensive social media list, prepared and presented a plan for Cerebain's visibility at the Chase/JP Morgan Annual Health Conference, created an investor road show, prepared a corporate fact sheet and remained available to the CEO on an "as needed" basis.  Id. ¶ 12.  Finally, plaintiff functioned as the "corporate spokesperson" for Cerebain and carried out the rebranding of Cerbain, including the creation of a new corporate logo, color scheme, business card, marketing material and slogan.  Id. ¶ 13.

Per the parties' employment agreement, plaintiff submitted monthly invoices to defendants for her services.  Id. ¶ 14 & Ex. C.  Nonetheless, and despite repeated promises to the contrary, defendants failed to pay plaintiff.  Id. ¶ 15 & Ex. D.  The last bill submitted to Cerebain representing plaintiff's wages due was sent in December 2015.

On July 21, 2016, plaintiff initiated litigation setting forth three claims:  (1) breach of contract; (2) violation of the Pennsylvania Wage Payment and Collection Law and (3) unjust enrichment.  Defendants moved to dismiss the complaint on October 3, 2016.  Plaintiff responded on October 13, 2016 and defendants filed a reply brief on October 19, 2016.

## STANDARD OF REVIEW

Under Rule 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).  In Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2007), the United States Supreme Court recognized that "a plaintiff's obligation to

provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555.

Following these basic dictates, the Supreme Court, in Ashcroft v. Iqbal, 556 U.S. 662 (2009), subsequently defined a two-pronged approach to a court's review of a motion to dismiss. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678.  Thus, although "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678–79.

Second, the Supreme Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 679. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.  A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.  Id.; see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232–34 (3d Cir. 2008) (holding that: (1) factual allegations of complaint must provide notice to defendant; (2) complaint must allege facts suggestive of the proscribed conduct; and (3) the complaint's factual allegations must be enough to raise a right to relief above the "speculative level."), quoting Twombly, 550 U.S. at 555.

Notwithstanding these new dictates, the basic tenets of the Rule 12(b)(6) standard of review have remained static.  Spence v. Brownsville Area Sch. Dist., No. 08-626, 2008 WL 2779079, at *2 (W.D. Pa. July 15, 2008).  The general rules of pleading still require only a short

and plain statement of the claim showing that the pleader is entitled to relief and need not contain

detailed factual allegations.  Fed. R. Civ. P. 8(a); Phillips, 515 F.3d at 233.  Further, even after

Iqbal, the court must "accept all factual allegations as true, construe the complaint in the light

most favorable to plaintiff, and then determine whether a reasonable inference may be drawn that

the defendant is liable for the alleged misconduct."  Argueta v. U.S. Immigration & Customs

Enforcement, 643 F.3d 60, 74 (3d Cir. 2011).

## DISCUSSION

### I.      Wage Payment and Collection Law Claim

Plaintiff's first claim seeks unpaid wages under the Wage Payment and Collection Law

(WPCL), 43 Pa. Cons. Stat. § 260.1, et seq.  The WPCL provides that "[e]very employer shall

pay all wages, other than fringe benefits and wage supplements, due to his employes [sic] on

regular paydays designated in advance by the employer."  43 Pa. Cons. Stat. § 260.3(a).  "Any

employe or group of employes [sic], labor organization or party to whom any type of wages is

payable may institute actions provided under this act."  Id. § 260.9a(a).  "The purpose of the

WPCL is to allow employees to recover wages and other benefits that are due from employers

pursuant to agreements between the parties."  Killian v. McCulloch, 850 F. Supp. 1239, 1255

(E.D. Pa. 1994), aff'd, 82 F.3d 406 (3d Cir. 1996).  Accordingly, as a prerequisite to relief under

the WPCL, a plaintiff must allege that he or she (a) is an employee and (b) is under a contract

with his or her employer for wages to be paid.  Lehman v. Legg Mason, Inc., 532 F. Supp. 2d

726, 734 (M.D. Pa. 2007).

Defendants now argue that plaintiff has not satisfied either of these requirements for

recovery under the WPCL.  First, they assert that plaintiff was not an employee of Cerebain, but

rather an independent contractor, thereby rendering the WPCL inapplicable.  Second, they

contend that even if plaintiff could be characterized as an employee, she has failed to establish a valid employment agreement pursuant to which her wages were due.  Addressing each of these arguments separately, I find that plaintiff has sufficiently pled a claim under the WPCL.

### A.    Whether Plaintiff Was an "Employee"

Defendants' first challenge to plaintiff's WPCL claim asserts that because plaintiff was not an "employee" of Cerebain, she cannot invoke the protections of this statute.  The WPCL applies only to employees, not to independent contractors.  Spyridakis v. Riesling Grp., Inc., 398 F. App'x 793, 798 (3d Cir. 2010).  Although the WPCL does not define the term "employee," Pennsylvania courts have looked to a series of factors to determine whether an individual is an employee or an independent contractor, including:

> [T]he control of the manner that work is to be done; responsibility for result only; terms of agreement between the parties; the nature of the work or occupation; the skill required for performance; whether one employed is engaged in a distinct occupation or business; which party supplies the tools; whether payment is by the time or by the job; whether the work is part of the regular business of the employer, and the right to terminate the employment at any time.

Williams v. Jani-King of Phila. Inc., ___ F.3d ___, No. 15-2049, 2016 WL 5111920, at *4 (3d Cir. Sept. 21, 2016), quoting Morin v. Brassington, 871 A.2d 844, 850 (Pa. Super. Ct. 2005), quoting Lynch v. WCAB, 544 A.2d 159, 160 (Pa. Commw. Ct. 1989).  "Paramount for [the court's] consideration among these factors is the right of an individual to control the manner that another's work is to be accomplished."  Morin, 871 A.2d at 850; see also Williams, 2016 WL 5111920, at *5.

The factual allegations of the present complaint allow a reasonable inference that plaintiff qualifies as an employee under the WPCL.  Plaintiff alleges that she was hired by Cerebain as a senior member of its management team to provide services and support relating to Cerebain's

"public relations, investor relations, corporate growth strategies, and was to be an advisor who was available to the Chief Executive Officer ("CEO") for any specific needs or projects as required."  Compl., ECF No. 1, ¶ 7.  She goes on to assert that the details of her employment were memorialized in an employment agreement, under which she was to receive $140,000 per year plus $400 per month in on-going expenses.  Id. ¶¶ 8– 9.  This allegation is substantiated by a copy of the e-mail attached to her complaint[1] reflecting that she would be given a "[b]ase salary" and was entitled to some type of participation in Cerebain's benefits package—language suggestive of an employer-employee relationship.  Id., Ex. A.  That same e-mail states that plaintiff would be a consultant with Cerebain for the month of June and have a formal start date of July 1, evidencing the parties' intent to convert plaintiff into an employee.  Id.  Further, Cerebain publicly announced plaintiff as a Vice President over the Business Wire, stating that Cerebain "has engaged biotech industry Miriam Weber Miller to serve on the executive team, as corporate vice president."  Id. ¶ 10 & Ex. B.  In addition, the announcement indicated that plaintiff would "report[] to CEO Eric Clemons," suggesting that Cerebain maintained some degree of control over the work that she performed.  Id.  Finally, in e-mail exchanges between plaintiff and CEO Eric Clemons, plaintiff referred to Cerebain as "our" company, stated that she was "hired" as an "executive" and emphasized that she was the "corporate spokesperson," all of which underscore the inference that she was an employee of the company.  Id., Ex. C.

In their motion to dismiss, defendants offer a different interpretation of the exhibits attached to the complaint and argue that they definitively demonstrate that plaintiff served only as a consultant providing "marketing communication and investor relations services" through her

---

[1]      "[A] court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010).

company Compass Group Consulting, LLC.  Defs.' Mot. to Dismiss, ECF. No. 7, at 8, citing

Compl., ECF No. 1, Ex. C.  They further contend that this relationship is evidenced by (a)

plaintiff's monthly invoicing of Cerbain for sums to be paid to her consulting group, (b)

plaintiff's contemplation of a write off for the alleged unpaid invoices—suggesting a relationship

between business entities—and (c) text messages from CEO Clemons showing that defendants

never officially authorized plaintiff to take on the role of corporate spokesperson at Cerebain.

Defendants' argument, however, attempts to impose a higher burden of proof on plaintiff

than is required at the motion to dismiss stage.  Under the Twombly/Iqbal standards, plaintiff

must set forth factual allegations that raise a right to relief above the speculative level.  Although

the factors identified by defendants could support an inference that plaintiff acted only as an

independent contractor for Cerebain, it is equally plausible, based on the facts raised by plaintiff,

that she was actually an employee entitled to relief under the WPCL.  For example, her

submission of invoices to Cerebain could either reflect her independent contractor relationship

with the company or suggest that plaintiff accepted an alternative form of payment while Cerbain

faced a capital shortfall.  Such factual disputes are inappropriate for resolution at this stage of the

litigation.  Rather, I must take all factual allegations of the complaint as true and draw all

inferences from those allegations in the light most favorable to plaintiff "unless defendants can

definitively show that it is a false statement or an unwarranted factual inference."  Synesiou v.

DesigntoMarket, Inc., No. 01-5358, 2002 WL 501494, at *2 (E.D. Pa. Apr. 3, 2002).  Doing so, I

find that plaintiff has stated a plausible claim that she is an employee for purposes of the WPCL.

**B.    Whether Plaintiff Had a Contract**

Alternatively, defendants argue that even if plaintiff could be deemed an employee, the

WPCL claim fails because plaintiff has not adequately pled the existence of a valid employment

contract.  The Pennsylvania Supreme Court has stated that the WPCL provides a means of

recovering wages that are due pursuant to a contract.  See Oberneder v. Link Computer Corp.,

696 A.2d 148, 150 (Pa. 1997) ("The Wage Payment and Collection Law provides employees a

statutory remedy to recover wages and other benefits that are contractually due to them."), citing

Killian, 850 F. Supp. at 1255.  The "WPCL does not create a right to compensation.  Rather, it

provides a statutory remedy when the employer breaches a contractual obligation to pay earned

wages.  The contract between the parties governs in determining whether specific wages are

earned."  Weldon v. Kraft, Inc., 896 F.2d 793, 801 (3d Cir. 1990) (internal citations omitted).  In

other words, "[t]o present a wage-payment claim, the employee must aver a contractual

entitlement to compensation from wages and a failure to pay that compensation."  Braun v. Wal–

Mart Stores, Inc., 24 A.3d 875, 954 (Pa. Super. Ct. 2011) (internal quotations and citations

omitted), aff'd, 106 A.3d 656 (Pa. 2014), cert. denied, 136 S. Ct. 1512 (2016).

      Nevertheless, when "employees do not work under an employment contract or a

collective bargaining agreement," a plaintiff may access the WPCL by establishing "the

formation of an implied oral contract between [the employer] and its employees."  De Asencio v.

Tyson Foods, Inc., 342 F.3d 301, 309 (3d Cir. 2003); see also Braun, 24 A.3d at 954 ("[A]bsent a

formal employment contract or collective bargaining agreement, an employee raising a WPCL

claim would have to establish, at a minimum, an implied oral contract between the employee and

employer.").  "Under Pennsylvania law, an implied contract arises when parties agree on the

obligation to be incurred, but their intention, instead of being expressed in words, is inferred

from the relationship between the parties and their conduct in light of the surrounding

circumstances."  Oxner v. Cliveden Nursing & Rehabilitiation Ctr. PA, L.P., 132 F. Supp. 3d

645, 649 (E.D. Pa. 2015). "An offer and acceptance need not be identifiable and the moment of

formation need not be precisely pinpointed." Id., citing Ingrassia Constr. Co., Inc. v. Walsh, 486 A.2d 478, 483 (Pa. Super. Ct. 1984).  As explained by the Pennsylvania Superior Court, "a promise to pay the reasonable value of the service is implied where one performs for another, with the other's knowledge, a useful service of a character that is usually charged for, and the latter expresses no dissent or avails himself of the service." Martin v. Little, Brown & Co., 450 A.2d 984, 987 (Pa. Super. Ct. 1981).  "A promise to pay for services can only be implied, however, in circumstances under which the party rendering the services would be justified in entertaining a reasonable expectation of being compensated by the party receiving the benefit of those services." Oxner, 132 F. Supp. 3d at 649.  Courts have repeatedly allowed WPCL claims to proceed where the plaintiff properly pled the existence of an implied contract. See, e.g., id. at 649–50 (finding that, despite absence of written employment agreement, the plaintiff sufficiently stated a WPCL claim for the additional hours she worked from home at her normal hourly rate); Gordon v. Maxim Healthcare Servs., Inc., No. 13-7175, 2014 WL 3438007, at *4 (E.D. Pa. July 15, 2014) ("Although Gordon did not work for Maxim according to the terms of any written agreement, she has averred that she provided services as a home healthcare aide in exchange for wages to be paid according to a week-long pay period. . . . There are sufficient facts set forth in the amended complaint to make plausible the existence of an implied oral contract between Gordon and Maxim."); Euceda v. Millwood, Inc., No. 12-0895, 2013 WL 4520468, at *5 (M.D. Pa. Aug. 26, 2013) ("[T]here is sufficient evidence of a contract to pay wages to support a WPCL claim at this stage.  The plaintiff has alleged, and the defendant does not deny, that he was employed as a pallet repairer by the defendant.  The plaintiff also asserts that he was paid . . . $.39 per pallet repaired [and] that the defendant availed itself of the plaintiff's work during two separate periods of employment.").

Accepting all factual allegations of the complaint as true, I find that plaintiff has, at minimum, sufficiently pled the existence of an implied employment agreement between her and Cerebain.  Plaintiff's complaint alleges that she was hired by Cerebain as a senior member of its management team at an agreed upon $140,000 per year, plus $400 per month in on-going expenses.  Compl., ECF. No. 1, ¶¶ 6, 8.  She further asserts that "the details of [her] employment with Defendant Cerebain were memorialized in [an] email dated May 22, 2014 between Plaintiff Miller and Defendant Cerebain's CEO, Defendant Clemons," a copy of which is attached to her complaint.  Id. ¶ 9.  According to a corporate announcement, Cerebain subsequently named plaintiff as corporate vice president on the executive team.  Id. ¶ 10, Ex. B.  Plaintiff then began submitting invoices to Cerebain for "[p]rofessional fees and expenses for marketing communication and investor relations," as well as "approved expenses" for various costs, under the name of Compass Group Consulting, LLC beginning in July 2014.  Id. ¶ 14, Ex. C.  These allegations and the exhibits attached to the complaint provide sufficient evidence of a contract to pay wages in exchange for plaintiff's service and justify plaintiff's maintenance of a reasonable expectation of being compensated at a specific rate for her work.

In an attempt to inject doubt into the existence of the contract, defendants argue that the email is simply a summary of a conversation, not a summary of an agreement.  They assert that it uses phrases such as "PLMK" (please let me know), "TBD" (to be determined) and "your feedback is greatly appreciated," which suggests that the terms of any agreement are uncertain.  Further, defendants contend that the email does not contain any definite term of employment, meaning that it is an at-will arrangement that provides no rights under the WPCL.

These arguments fail to establish grounds for dismissal.  The complaint clearly pleads the existence of an employment agreement, albeit an implied oral agreement.  The e-mail attached to

the complaint substantiates the inference that the parties intended to be bound by some contractual arrangement wherein plaintiff would work for a base salary of $140,000, plus $400 per month expenses.  While the e-mail reflects the existence of various uncertainties in the agreement, such as plaintiff's official title and the amount of her compensation for her work as a consultant prior to her official start date, those uncertainties do not negate the existence of an employment agreement for purposes of the WPCL.  See ProtoComm Corp. v. Fluent, Inc., No. 93-0518, 1995 WL 3671, at *14 (E.D. Pa. Jan. 4, 1995) ("Under Pennsylvania law, it is possible for a meeting of the minds to occur and a contract formed in the absence of each and every obligation of the parties having been particularized. . . . In fact, a contract can be formed even if many of the particulars or specifics have not been discussed or agreed upon.") (internal quotations and quotation marks omitted).  Further, the mere fact that the agreement fails to state a specific duration is of no moment.  While a contract of employment is presumed to be terminable at will by either party absent a specification of definite duration, Bruffet v. Warner Commc'ns, Inc., 692 F.2d 910, 913 (3d Cir. 1982), the existence of an at-will contract does not negate a finding of an employment agreement for purposes of the WPCL.  Bertolino v. Controls Link, Inc., No. 14-720, 2014 WL 5148159, at *4 (W.D. Pa. Oct. 14, 2014) ("[W]hile an employer may permissibly discharge an at-will employee at any time, the at-will doctrine does not relieve the employer of its contractual obligation to provide the compensation promised in return for the employee's services" for purposes of the WPCL), citing Braun v. Wal-Mart Stores, Inc., 24 A.3d 875 (Pa. Super. Ct. 2011).  In short, construing the complaint in the light most favorable to plaintiff, I find that she has adequately pled the existence of an employment agreement upon which a WPCL claim may be based.

II.     **Breach of Contract**

Plaintiff's breach of contract claim, set forth in count I of the complaint, alleges as

follows:

> 19.     Pursuant to the Employment Agreement between Miller
> and Cerebain, Miller was entitled to payment of $140,000 a year in
> salary, plus $400 a month in expenses.
> 20.     Despite this clear contractual language, Cerebain failed and
> refused to make full and complete payment to Plaintiff Miller.
> 21.     During the (18) months in which Plaintiff Miller worked
> for Defendant Cerebain and submitted invoices to the Defendant,
> Plaintiff Miller incurred over $217,000 in earned wages, while
> only receiving approximately $42,000.00 in payments from
> Defendant Cerebain.
> 22.     Accordingly, Defendant Cerebain is liable under its
> Employment Agreement for over $175,200.00 in unpaid wages,
> and the Defendant's failure to make such payments constitutes a
> breach of contract between Cerebain and Miller.

Compl., ECF No. 1, ¶¶ 19–22.

Defendants now argue that these allegations do not state a plausible claim for breach of

contract because plaintiff fails to establish either (1) a manifest intent to be bound or (2) terms

sufficiently definite to be specifically enforced.  See Channel Home Ctrs. v. Grossman, 795 F.2d

291, 298–99 (3d Cir. 1986) (holding that, under Pennsylvania law, "the test for enforceability of

an agreement is whether both parties have manifested an intention to be bound by its terms and

whether the terms are sufficiently definite to be specifically enforced."), citing Lombardo v.

Gasparini Excavating Co., 123 A.2d 663, 666 (Pa. 1956).  I find that neither argument has merit.

A.     **Intent to Be Bound**

When determining manifestation of intent to be bound, the object of inquiry is not the

inner, subjective intent of the parties, but rather the intent a reasonable person would apprehend

in considering the parties' behavior.  Am. Eagle Outfitters v. Lyle & Scott, Ltd., 584 F.3d 575,

582 (3d Cir. 2009), citing Ingrassia Constr. Co., Inc. v. Walsh, 486 A.2d 478, 483 (Pa. Super. Ct.

13

1984).  "[A] true and actual meeting of the minds is not necessary to form a contract."  Am.

Eagle, 584 F.3d at 582 (citing Ingrassia, 486 A.2d at 483).  "'It is hornbook law that evidence of

preliminary negotiations or an agreement to enter into a binding contract in the future does not

alone constitute a contract.'"  Am. Eagle Outfitters, 584 F.3d at 582, quoting Channel Home

Ctrs. v. Grossman, 795 F.2d 291, 298 (3d Cir. 1986); ATACS Corp. v. Trans World Commc'ns,

Inc., 155 F.3d 659, 666–67 (3d Cir. 1998) ("[I]t is well established that evidence of preliminary

negotiations or a general agreement to enter a binding contract in the future fail as enforceable

contracts because the parties themselves have not come to an agreement on the essential terms of

the bargain and therefore there is nothing for the court to enforce.").  "On the other hand,

however, 'parties may bind themselves contractually although they intend, at some later date, to

draft a more formal document.'"  Am. Eagle Outfitters, 584 F.3d at 582, quoting Goldman v.

McShain, 247 A.2d 455, 459 (Pa. 1968).  Thus, "'[m]utual manifestations of assent that are in

themselves sufficient to make a contract will not be prevented from so operating by the mere fact

that the parties also manifest an intention to prepare and adopt a written memorial thereof. . . .'"

Am. Eagle Outfitters, 584 F.3d at 582, quoting Restatement (First) of Contracts § 26 (1932); see

also Shell's Disposal and Recycling, Inc. v. City of Lancaster, 504 F. App'x 194, 201 (3d Cir.

2012) ("The key inquiry is not the extent to which the parties have put their agreement in

writing, but rather whether the parties agreed to the essential terms of a contract.").

       Defendants argue, in somewhat cursory fashion, that the May 22, 2014 e-mail delineating

the parties' purported employment agreement is, at best, evidence of preliminary negotiations

between the parties or an offer from plaintiff.  They further contend that the email fails to

manifest anything approaching an acceptance by defendants or the "meeting of the minds"

necessary for contract formation.

I disagree.  Plaintiff specifically alleges that she was hired under an employment agreement to serve as a senior member of Cerebain's management team at a specific salary, as memorialized in the May 22, 2014 e-mail.  Compl., ECF No. 1, ¶¶ 6–8, 19 & Ex. A.  Contrary to defendants' argument, that e-mail reflects more than mere preliminary negotiations or future intent to enter into a contract.  Indeed, the e-mail is described as a "summary of our conversation" and suggests a memorialization of the parties' "Long-Term Agreement" that had already been reached on the essential elements of their arrangement.  Moreover, the allegations regarding the parties' subsequent course of conduct—defendants' announcement of plaintiff over the Business Wire as Executive Vice President, plaintiff's provision of all requested services to defendants and Cerebain's initial payments to plaintiff according to the terms set forth in the e-mail—constitute objective manifestations of the parties' assent to the precise terms contained within the e-mail.  Id. ¶¶ 10, 11, 21.)  Taking these facts, and all inference therefrom, in the light most favorable to plaintiff, I find that these allegations and exhibits sufficiently establish a meeting of the minds for the breach of contract claim to survive a Rule 12(b)(6) motion.

### B.    Sufficiently Definite Terms

It is not enough, of course, that the parties intended to contract.  "'[I]n order for there to be an enforceable contract, the nature and extent of its obligation must be certain; the parties themselves must agree upon the material and necessary details of the bargain.'"  Am. Eagle Outfitters, 584 F.3d at 585, quoting Lombardo v. Gasparini Excavating Co., 123 A.2d 663, 666 (Pa. 1956).  In other words, a court must look to see whether "the terms are sufficiently definite to be specifically enforced."  Channel Home Ctrs., 795 F.2d at 298–99.  This is a question of law.  Am. Eagle Outfitters, 584 F.3d at 585.  The definiteness requirement does not mean that the presence of any interpretive ambiguity renders an agreement unenforceable.  Shell's Disposal,

504 F. App'x at 202.  Rather, "a contract fails for indefiniteness when it is 'impossible to understand' what the parties agreed to because the essential terms are ambiguous or poorly defined."  Id.  (quotations omitted).

Similar to their argument with respect to plaintiff's WPCL claim, defendants argue that the e-mail agreement is not sufficiently definite to be enforced.  They again contend that the e-mail's use of the phrases "PLMK" (please let me know), "TBD" (to be determined) and "your feedback is greatly appreciated" indicate a clear lack of finality regarding the potential terms of the e-mail.

As explained above, however, "[a] meeting of the minds can occur in the absence of each and every obligation of the parties having been particularized."  United Incentives, Inc. v. Sea Gull Lighting Prods., Inc., No. 91-0226, 1992 WL 41322, at *4 (E.D. Pa. Mar. 2, 1992).  "Once it is determined that the parties intended to form a binding agreement, certainty of terms is important only as a basis for determining the existence of a breach and for giving an appropriate remedy."  Browne v. Maxfield, 663 F. Supp. 1193, 1198 (E.D. Pa. 1987), quoting Restatement (Second) of Contracts § 33.  Under the facts alleged by plaintiff, the essential terms of the agreement are certain:  plaintiff was to perform certain executive tasks for Cerebain in exchange for $140,000 a year in salary plus $400 a month in expenses.  The use of phrases such as "PLMK" and "TBD" concerned non-material matters such as her official title and how she was to be compensated for her work in the month of June prior to her official start date.  The failure to particularize these details does not detract from the obvious meeting of the minds that can be inferred from plaintiff's complaint and attached exhibits.  Accordingly, I will deny defendants' motion to dismiss on this ground.

16

### III.    Unjust Enrichment

Plaintiff's final cause of action sets forth a claim of unjust enrichment.[2]  When there has

been no meeting of the minds between the parties, equitable relief . . . may be available."  Param

Techs., Inc. v. Intelligent Home Solutions, Inc., No. 04-1348, 2005 WL 2050446, at *4 (E.D. Pa.

Aug. 25, 2005).  "Quantum meruit [or quasi-contract] is an implied contract remedy based on

payment for services rendered and on prevention of unjust enrichment."  Id.  "In service

contracts, for example, recovery under quasi-contract may be available where the parties have

not fixed the value of the service to be provided, but it would be unjust to allow the beneficiary

to retain a benefit for which there was an implied promise to pay."  Id.  "In Pennsylvania, a party

seeking to plead unjust enrichment must allege the following elements: '(1) a benefit conferred

on the defendant by the plaintiff; (2) appreciation of the benefit by the defendant; and (3) the

defendant's acceptance and retention of the benefit under such circumstances that it would be

inequitable for defendant to retain the benefit without payment of value.'"  Kliesh v. Select

---

[2]    I note that claims of breach of contract and unjust enrichment are generally not compatible.
"Pennsylvania has long ascribed to the rule that when the 'parties' relationship is based on an
express written contract no unjust enrichment recovery is permitted.'"  Montanez v. HSBC
Mortg. Corp. (USA), 876 F. Supp. 2d 504, 515 (E.D. Pa. 2012), quoting Novacare, Inc. v. S.
Health Mgmt. Inc., No. 97–5903, 1998 WL 470142, at *1 (E.D. Pa. Aug. 11, 1998).
Nonetheless, "[a] plaintiff is permitted to plead alternative theories of recovery based on breach
of contract and unjust enrichment in cases where there is a 'question as to the validity of the
contract in question.'"  Premier Payments Online, Inc. v. Payment Sys. Worldwide, 848 F. Supp.
2d 513, 527 (E.D. Pa. 2012), quoting AmerisourceBergen Drug Corp. v. Allscripts Healthcare,
LLC, No. 10-6087, 2011 WL 3241356, at *3 (E.D. Pa. July 29, 2011); see also Surety Admins.,
Inc. v. Pacho's Bail Bonds, No. 05-5851, 2007 WL 1002136, at *4 (E.D. Pa. Mar. 30, 2007)
(allowing a plaintiff to plead breach-of-contract and unjust-enrichment claims alternatively
where defendant "dispute[d] the existence of a contract").
            In the present case, the parties dispute the existence of a contract between them.  At the
motion to dismiss stage, I cannot resolve whether a valid contract exists.  As such, I will permit
plaintiff to plead in the alternative.

Portfolio Serv., Inc., No. 12-548, 2012 WL 2500973, at *8 (E.D. Pa. June 29, 2012), quoting

Giordano v. Claudio, 714 F. Supp. 2d 508, 530 (E.D. Pa. 2010) (further quotations omitted).

Defendants argue that plaintiffs' allegations in Count III of her complaint are "labels and

conclusions" that cannot be considered under the Twombly/Iqbal standards.  They further

contend that that, aside from attaching invoices to the complaint, plaintiff has not pled any facts,

with any level of specificity, to suggest that defendants unjustly accepted and retained a benefit

of any value from plaintiff.

Defendants' argument, however, is premised on a review of solely the allegations within

count III of the complaint[3] without consideration of the remainder of the complaint, which sets

forth factual allegations supporting all three elements of an unjust enrichment claim.  First,

plaintiff asserts that she conferred a benefit on defendants by "creating the content for, and

managing the development and launch of the corporate website, preparing a strategic outreach

plan, a community outreach plan, an Alzheimer's Month Observation plan, and a social media

strategy."  Compl., ECF No. 1, ¶ 11.)  In addition, she prepared and maintained a comprehensive

social media list, prepared and presented a plan for Cerebain's visibility at the Chase/JP Morgan

Annual Health Conference, prepared an investor road show, prepared a corporate fact sheet and

was available to the CEO on an 'as needed' basis."  Id. ¶ 12.  Second, plaintiff alleges facts to

show that Cerebain appreciated these benefits when it announced plaintiff as the "corporate

spokesperson" and received the benefit of plaintiff's rebranding of the company, including the

---

[3]     Count III of the complaint sets forth a threadbare recital of the elements of an unjust
enrichment cause of action by alleging that Cerebain received the benefit of plaintiff's hard work
and business services without paying for those services and has, therefore, been unjustly
enriched.  Compl., ECF No. 1, ¶¶ 31, 32.  Notably, however, count III also incorporates by
reference all of the previous factual allegations within the complaint, making it necessary to
consider those allegations on a Rule 12(b)(6) review.  Id. ¶ 30.

creation of a new corporate logo, color scheme, business card, market material and slogan, the last of which is still in use today.  Id. ¶ 13.  Finally, plaintiff pleads that defendants were unjustly enriched because "despite CEO Clemons' repeated promises to pay [plaintiff] for her wages and expenses incurred upon Cerebain receiving an additional capital infusion, and despite Defendant Cerebain and Defendant and Defendant Clemons always treating [plaintiff] as an employee of Defendant Cerebain which entitled her to full negotiated salary," plaintiff was not paid in full for her services.  Id. ¶ 15.

In short, the unjust enrichment claim is well pled and adequately supported by factual allegations that give rise to a plausible cause of action.  Therefore, I will decline to dismiss this claim.

## CONCLUSION

At this early stage of litigation, plaintiff need only set forth a short and plain statement of her causes of action sufficient to raise the right to relief above the speculative level. Undoubtedly, she has done so in the complaint at bar and has adequately pled causes of action for a violation of the WPCL, breach of contract and unjust enrichment.  Accordingly, I will deny defendants' motion to dismiss and will order them to file an answer to the complaint on or before November 28, 2016.

An appropriate Order follows.